UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X
DAVID ROBINSON,

        Plaintiff,

  - against -

DETECTIVE VELASQUEZ, Chief of Department (N.Y.P.D.),

        Defendant.
------------------------------------X

FOR ELECTRONIC
PUBLICATION ONLY

**MEMORANDUM & ORDER**

07-CV-3645 (KAM) (LB)

MATSUMOTO, United States District Judge:

       Plaintiff David Robinson ("plaintiff" or "Robinson") brings this *pro se* action against defendant Detective Edwin Velasquez ("defendant" or "Velasquez"), a detective in the New York City Police Department ("NYPD"), alleging violations of 42 U.S.C. § 1983 ("Section 1983").[1] Plaintiff alleges that he suffered personal injuries as a result of defendant's "misconduct" on June 5, 2004.[2] (Doc. No. 4, Compl. at 1, 3.)

---

[1] The only reference in plaintiff's complaint to a federal constitutional or statutory provision is in the complaint's pre-printed title: "Complaint under the Civil Rights Act, 42 U.S.C. § 1983."

[2] This action was originally commenced in the United States District Court for the Southern District of New York. The docket in that court reflects that plaintiff's Complaint, dated May 17, 2007, was filed on August 14, 2007, however, in the order transferring the case to this court, it was noted that the Pro Se Office of the Southern District "received the complaint on June 7, 2007." (Doc. No. 4, Transfer Order, dated Aug. 14, 2007 ("Transfer Order").) Plaintiff's Section 1983 claim thus appears to be time-

Presently before the court is defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of this case on the grounds that (1) there is no evidence that defendant violated plaintiff's Constitutional rights and (2) defendant is entitled to qualified immunity. (*See generally*, Doc. No. 43, Def. Mem. at 2.) Plaintiff has failed to oppose defendant's motion for summary judgment, despite receiving notice of the motion and supporting papers, including a Local Civil Rule 56.2 Notice to a *Pro Se* Party, and numerous opportunities to do so.[3] (*See* Doc. No. 51, Defendant's Notice Pursuant to Rule 56.2, setting forth plaintiff's obligations in opposing a motion for summary

---

barred. *See Jackson v. Suffolk County Homicide Bureau*, 135 F.3d 254, 256 (2d Cir. 1998) (observing that the statute of limitations for a Section 1983 action in New York is three years). Yet, because defendant has not moved to dismiss the Section 1983 claims on this ground, the court will not assume that defendant intended to do so.

[3] Defendant's motion was served upon plaintiff on December 5, 2008 at the correctional facility listed on plaintiff's Complaint. (Doc. No. 41, Declaration of Service.) A review of the New York State Department of Correction's website indicates that defendant was released from that facility on or about February 13, 2009. By Order dated May 12, 2009, the court, *inter alia*, provided plaintiff a final opportunity to oppose defendant's summary judgment motion. (Doc. No. 48.) By Order dated June 5, 2009, the court, *inter alia*, observed that plaintiff had failed to oppose defendant's motion and thus, deemed the motion "unopposed." (Doc. No. 50.)

2

judgment.) For the reasons set forth herein, defendant's motion for summary judgment is granted and this case is dismissed.

## BACKGROUND

The following facts, taken from defendant's statement pursuant to Local Civil Rule 56.1, are undisputed. As provided in Local Civil Rule 56.1(c), all material facts set forth in defendant's Rule 56.1 Statement (Doc. No. 42, "Def. 56.1 Stmt."), are deemed admitted because such statements were "not controverted by the statement required to be served by [plaintiff]." See Local Rule 56.1(c). Notwithstanding, the court has viewed the facts in a light most favorable to plaintiff, the nonmoving party. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (holding that when a motion for summary judgment is unopposed, the district court must still assess whether the moving party has met its burden of demonstrating that it is entitled to judgment as a matter of law).

A Criminal Complaint of the Criminal Court of Kings County charges that on June 5, 2004, plaintiff and an accomplice broke into a warehouse located at 175 6th Street in Brooklyn, New York, and removed five boxes filled with merchandise. (Def. 56.1 Stmt. ¶¶ 1-2.) A civilian witness

reported the incident to the NYPD and described plaintiff's vehicle as a gray Ford Taurus with New Jersey license plate number "RCH45H." (*Id.* ¶¶ 3-5.) Information concerning the crime, suspects and vehicle was broadcast by the NYPD over the 9-1-1 dispatch system to NYPD officers. (*Id.* ¶ 5.) The NYPD dispatcher noted that the occupants of the Taurus were "wanted for poss robbery . . . ." (Id. ¶ 5.) Detective Velasquez heard the dispatch transmission. (*Id.* ¶ 11.)

Detective Velasquez, who was traveling alone in an unmarked black Jeep Cherokee, observed a vehicle matching the description traveling on Third Avenue toward the entrance of the Gowanus Expressway. (*Id.* ¶ 12; see Doc. No. 44, Declaration of Morgan Kunz ("Kunz Decl."), Ex. F, Declaration of Edwin Velasquez ("Velasquez Decl."), ¶¶ 6, 8.) Detective Velasquez also observed an unmarked NYPD vehicle following the Taurus. (Velasquez Decl. ¶ 9.) Velasquez followed the Taurus onto the expressway and observed plaintiff "driving fast and swerving between cars." (*Id.* ¶ 11.)

Both unmarked police vehicles initially followed plaintiff without identifying themselves as police officers and without attempting to stop plaintiff. (Def. 56.1 Stmt. ¶ 15.) According to Detective Velasquez, "I did not

4

immediately attempt to stop the Taurus because I wanted to find a location where the Taurus could not flee and/or cause injury to its occupants, police officers, or the general public." (Velasquez Decl. ¶ 13.) The other unmarked police vehicle also did not immediately attempt to stop plaintiff. (*Id.* ¶ 14.) Defendant followed plaintiff from behind and then drove past plaintiff and positioned his vehicle in front of plaintiff's Taurus. (Def. 56.1 Stmt. ¶ 17.)

According to Detective Velasquez, as plaintiff approached a fork in the expressway, "traffic began to slow down" (*id.* ¶ 18) and "it appeared that the Taurus was heading toward the Verrazano-Narrows Bridge, so I positioned my vehicle in one of the two lanes heading in that direction, and engaged the turret lights on my car." (Velasquez Decl. ¶ 18.) The other unmarked police vehicle, which had followed the Taurus from behind, engaged its lights, sirens and loud speaker. (*Id.* ¶ 19.) Plaintiff does not dispute the defendant's account that the other police vehicle engaged its lights, sirens and loud speaker. According to Detective Velasquez, the driver of the Taurus, subsequently identified as plaintiff, swerved his car toward the other direction of the fork, causing the Taurus to lose control and collide with a guardrail. (*Id.* ¶¶ 21-

23; Def. 56.1 Stmt. ¶ 21.) Plaintiff was not injured as a result of the collision with the guardrail. (Def. 56.1 Stmt. ¶ 23; see Kunz Decl., Ex. H, Deposition of David Robinson ("Pl. Dep.") at 111.)

By contrast, plaintiff testified that he observed a black Jeep Cherokee "com[e] up tight on my back door like he was in a hurry" and that after plaintiff signaled to change lanes, the Jeep Cherokee hit the left front fender of his car. (Pl. Dep. at 92, 95.) Plaintiff further testified that there were two occupants in the Jeep Cherokee in civilian clothes and that the driver brandished a gun. (*Id.* at 92, 96, 99-100.) Plaintiff remarked to his accomplice that he wondered if the occupants of the Jeep Cherokee were "police or something." (*Id.* at 96.) Plaintiff testified that in an effort to evade and "cut around" the Jeep Cherokee, plaintiff "slammed" on the brakes, causing the Taurus to collide with a guardrail. (*Id.* at 104.)

After the collision, plaintiff exited the Taurus and fled toward the guardrail of the roadway, "about a foot or two" from his vehicle. (Def. 56.1 Stmt. ¶ 24; Pl. Dep. at 110, 230.) Plaintiff testified that he did not believe that defendant was a police officer and that he fled "[b]ecause I thought the man was gonna shoot me." (Pl.

6

Dep. at 112.) Plaintiff observed a marked police car on the opposite side of the expressway, which was approximately 20 to 30 feet below the roadway where plaintiff had stopped and exited his vehicle. (Pl. Dep. at 113-114; see Def. 56.1 Stmt. ¶ 26.) In an effort to seek the assistance from the oncoming marked police car, plaintiff jumped over the rail of the roadway from the ledge of the overpass toward the police car on the expressway below. (Pl. Dep. at 111-114; Kunz Decl., Ex. I, Transcript of plaintiff's testimony on Jan. 14, 2005 at his criminal jury trial ("Tr.") at 294.) Before he jumped, plaintiff did not look back to see if he was being chased. (Def. 56.1 Stmt. ¶ 29; Pl. Dep. at 230-231.) Plaintiff observed the Jeep Cherokee at most five feet away in front of him at the time he jumped. (Pl. Dep. at 231.) No one touched plaintiff after he exited the Taurus and before he jumped from the expressway. (Def. 56.1 Stmt. ¶ 30.) Upon landing, plaintiff suffered serious injuries to his legs and back. (Id. ¶ 31.) Police officers in the marked NYPD vehicle on the roadway below immediately provided plaintiff with medical assistance and called an ambulance. (Id. ¶ 32; Pl. Dep. at 119.)

Thereafter, NYPD officers recovered from plaintiff's vehicle the five stolen boxes and, on June 6,

2004, plaintiff was charged in a criminal complaint with several felony offenses. (Def. 56.1 Stmt. ¶¶ 34-36.) On June 28, 2004, a grand jury indicted plaintiff on five charges stemming from the June 5, 2004 incident: burglary in the third degree; criminal possess of stolen property in the fifth degree; criminal mischief in the fourth degree; petit larceny; and resisting arrest. (*Id.* ¶¶ 37-38.)

On January 18, 2005, a jury found plaintiff guilty of burglary in the third degree. (*Id.* ¶ 39; *see* Kunz Dec., Ex. D, Certificate of Disposition Indictment.) As a result of the guilty verdict, plaintiff was sentenced to a term of imprisonment of 42 months to 7 years. (Def. 56.1 Stmt. ¶ 40.)

## DISCUSSION

### A. Summary Judgment Standard

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original). The substantive law of the claim governs materiality, because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248 (citation omitted). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Second Circuit has instructed that "special solicitude should be afforded *pro se* litigants . . . when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citation omitted). Thus, the pleadings of a *pro se* plaintiff must be read liberally and interpreted to "raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). "Nevertheless, proceeding *pro se* does not otherwise relieve plaintiffs from the usual requirements of summary judgment." *Adams v. New Jersey Transit Rail Operations*, No. 97-CV-430, 2000 U.S. Dist. LEXIS 2154, at *23 (S.D.N.Y. Feb. 28, 2000) (citing *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995)).

Further, it is well established that a *pro se* plaintiff, like a represented plaintiff, may not rely solely on his complaint to defeat a summary judgment motion. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996). Accordingly, the Second Circuit has held that if a *pro se* plaintiff fails to oppose a defendant's motion for summary judgment, the district court may grant the defendant's motion if (1) the *pro se* plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the court is satisfied that "the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 486 (quoting Fed. R. Civ. P. 56(c)).

Here, "[t]he notice furnished to plaintiff by defendant's Local Civil Rule 56.2 Statement provided the requisite notice that failure to oppose defendant's motion could result in the grant of summary judgment against him and the dismissal of his case." *See Mercado v. Division of New York State Police*, No. 96-CV-235, 2001 U.S. Dist. LEXIS 6718, at *21 (S.D.N.Y. May 24, 2001) (citing *Champion*, 76 F.3d at 486). Moreover, the court granted plaintiff two extensions to provide him ample time to oppose defendant's motion and repeatedly warned plaintiff that his failure to

file opposition papers would result in the motion being decided unopposed. (*See* Doc. Nos. 48, 50.) Because plaintiff failed to respond to defendant's summary judgment motion, the facts set forth in defendant's motion papers and the assertions in defendant's Rule 56.1 Statement are accepted as true. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement . . . served by the moving party will be deemed to be admitted . . . unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.") Thus, the court considers whether the undisputed facts establish that defendant is entitled to summary judgment as a matter of law.

**B. Claims Arising under 42 U.S.C. § 1983**

The plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") for the alleged deprivation of his constitutional rights. In relevant part, Section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

> be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1979) (internal quotation marks and citation omitted). To establish liability under Section 1983, a plaintiff must demonstrate that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

In his *pro se* complaint, plaintiff purports to raise claims under Section 1983, but fails to specify, as required to state a valid Section 1983 cause of action, which substantive constitutional rights defendant allegedly violated. In this regard, plaintiff's complaint does not appear to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests[,]" as required by Fed. R. Civ. P. 8(a). *See Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 212 (N.D.N.Y. 2008) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336,

12

346 (2005)); Fed. R. Civ. P. 8(a)(2) (requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").

Moreover, it appears that plaintiff has incorrectly sued defendant Velasquez in his official capacity, who is named herein has "Detective Velasquez, Chief of Department." (*See* Compl. at 1.) It is well settled, however, that a "state official sued in his official capacity is not a person within the meaning of Section 1983, and, consequently, is not subject to liability for depriving a person of constitutional rights." *Perez v. City of New York*, No. 07-CV-10319, 2009 U.S. Dist. LEXIS 50066, at *11 (S.D.N.Y. June 8, 2009) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Notwithstanding the defects in plaintiff's Complaint, out of an abundance of caution and given the leeway afforded to *pro se* plaintiffs, *see Lewinski*, 848 F.2d at 344, the court liberally construes plaintiff's Complaint to allege that defendant, in his individual capacity, used excessive force against plaintiff in connection with plaintiff's June 5, 2004 arrest, in violation of plaintiff's rights under the Fourth[4] and

---

[4] The Fourth Amendment provides,

13

Fourteenth[5] Amendments. *See County of Sacramento v. Lewis*, 523 U.S. 833, 844-845 (1998); *Connor*, 490 U.S. at 394.

As defendant points out, the "key question in determining whether plaintiff's allegations sound under the Fourth or the Fourteenth Amendment is whether he [plaintiff] was seized within the meaning of the Fourth Amendment at the time he sustained his injuries. If he was seized, then the Fourth Amendment applies." (Def. Mem. at 5) (citing *Connor*, 490 U.S. at 395). If he was not seized, plaintiff's claim should be analyzed under Fourteenth Amendment substantive due process grounds. *See Lewis*, 523 U.S. at 844-845 (holding that the Fourteenth Amendment, not

---

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[5] The Fourteenth Amendment provides, in relevant part,

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

14

the Fourth Amendment, applied where police car unintentionally struck a fleeing motorcycle causing injury to its passenger).

### 1. The Fourth Amendment

"The Fourth Amendment covers only 'searches and seizures.'" *Lewis*, 523 U.S. at 843. The Supreme Court has held that "a 'seizure' has occurred" when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Significantly, "a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment." *Lewis*, 523 U.S. at 844 (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Indeed, "[i]f a defendant manifests his belief that he has not been seized by attempting to flee, he has not submitted to a show of authority and, therefore, has not been seized." *United States v. Smith*, 423 F.3d 25, 31 (1st Cir. 2005) (citing *Hodari D.*, 499 U.S. at 626-29).

Under the circumstances, even when viewed in a light most favorable to plaintiff, there was no "seizure" within the meaning of the Fourth Amendment. According to plaintiff, defendant pulled up in civilian clothes and an unmarked vehicle alongside plaintiff's vehicle, brandished

15

a gun and "ram[med]" plaintiff's car. (Pl. Dep. at 92, 95-96, 99-100.) As a result, plaintiff swerved, causing plaintiff to lose control of his vehicle and collide with a guardrail. (Velasquez Decl. ¶¶ 21-23; Def. 56.1 Stmt. ¶ 21.) Defendant denies ramming plaintiff's car, and claims that plaintiff crashed while attempting to flee from defendant. (Velasquez Decl. ¶¶ 21-23; Def. 56.1 Stmt. ¶ 21.) Significantly, plaintiff was not injured from the collision and continued to flee on foot. (Def. 56.1 Stmt. ¶¶ 23-24; Pl. Dep. at 111.) Clearly, defendant's actions did not cause plaintiff to stop; quite to the contrary, they caused plaintiff to continue to flee. In continuing to flee, plaintiff "manifest[ed] his belief that he ha[d] not been seized . . . ." *See Smith*, 423 F.3d at 31 (citing *Hodari D.*, 499 U.S. at 626-29). Because plaintiff had not been seized within the meaning of the Fourth Amendment at the time of his injuries, any excessive force claim under the Fourth Amendment fails as a matter of law.

Moreover, even if there had been a seizure and defendant rammed plaintiff's vehicle, the amount of force used by defendant in allegedly ramming plaintiff's vehicle was objectively reasonable. *See generally, Scott v. Harris*, 550 U.S. 372 (2007). In *Scott*, a defendant police officer engaged in a high-speed chase after observing the

16

plaintiff speeding. The officer intentionally rammed plaintiff's car with his bumper, causing the plaintiff's car to crash, severely injuring plaintiff. There, the plaintiff did not continue to flee. The plaintiff subsequently sued the officer alleging that the officer used excessive force to arrest him in violation of the Fourth Amendment. The Supreme Court concluded that the officer did not use excessive force under the circumstances, because he was reasonably stopping an actual and imminent threat to the lives of any nearby pedestrians, motorists, and officers. *Id.* at 383.

The same conclusion applies here. Plaintiff, a robbery suspect, was observed by defendant to be "driving fast and swerving between cars" in slow-moving traffic. (Velasquez Decl. ¶ 11; Def. 56.1 Stmt. ¶ 18.) As in *Scott*, plaintiff posed a threat to himself, other motorists and to pursuing police officers. Thus, it was objectively reasonable for defendant to attempt to end the pursuit.

On this basis, defendant is also entitled to qualified immunity. Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). The state actor is amenable to suit only if a

17

reasonable person would have known that the state actor's conduct infringed the plaintiff's constitutional rights. *Id.* Nor will liability attach if a reasonable state actor could have believed that the challenged conduct was lawful. The doctrine of qualified immunity provides officials with "immunity from suit rather than a mere defense to liability . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Here, even if defendant's use of force amounted to a constitutional violation, it is clear that, in light of *Scott*, at a minimum, a reasonable officer could properly believe that the use of force under these circumstances would not violate a clearly established constitutional right. Defendant is thus entitled to summary judgment based on plaintiff's failure to demonstrate that there is a genuine issue for trial on any Fourth Amendment excessive force claim.

### 2. The Fourteenth Amendment

Having found that plaintiff was not "seized" within the meaning of the Fourth Amendment, plaintiff's Complaint can be construed to assert a claim under the substantive due process clause of the Fourteenth Amendment. *See Lewis*, 523 U.S. at 843. "Substantive due process protects against government conduct that deprives people of protected rights and truly 'shocks the conscience' . . . ."

*Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 358 (N.D.N.Y. 2008) (quoting *Lewis*, 523 U.S. at 846); *see also Lewis*, 523 U.S. at 846 (substantive due process protects against only "the most egregious official conduct").

In *Lewis*, the Supreme Court held that a police officer does not violate substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspect. *Lewis*, 523 U.S. at 853-54 ("we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983.") The Supreme Court found that only a purpose to cause harm "unrelated to the legitimate object of arrest" will satisfy the shocks-the-conscience standard applied to high-speed pursuits. *See id.* at 836.

The court finds that none of plaintiff's allegations against defendant rise to the level of a substantive due process violation. Under the circumstances, when viewed in a light most favorable to plaintiff, defendant's alleged ramming of plaintiff's car, failure to identify himself as a police officer, and brandishing of a gun at plaintiff during a police pursuit do not amount to "the most egregious official conduct."

19

*See id.* at 846. Nor is there any evidence that defendant intended to cause plaintiff any harm "unrelated to the legitimate object" of apprehending plaintiff. *See id.* at 836. Indeed, it is undisputed that plaintiff caused his own injuries by jumping twenty feet down onto a roadway while attempting to flee from Detective Velasquez. Accordingly, with regard to any substantive due process claim, defendant's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted. The Clerk of the Court is respectfully requested to enter judgment in favor of defendant, and to close this case. The Clerk of the Court is further requested to mail a copy of this Order to plaintiff.

SO ORDERED.

Dated: Brooklyn, New York
March 15, 2010

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York